IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIARA V. OLLBERDING, | ) | CASE NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **AND REQUEST FOR JURY TRIAL** |
| GOODWILL INDUSTRIES, INC., | ) | |
| a Nebraska non-profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff and for her cause of action against the Defendant, states and alleges as follows, to-wit:

## **INTRODUCTION**

1.      Tiara V. Ollberding ("Ollberding"), is a former employee of Goodwill Industries, Inc. ("Goodwill").

2.      Ollberding was hired by Goodwill Industries in February of 2019 as a Work Experience Trainer.

3.      Ms. Ollberding's job involved assisting special needs program participants with work training and effectively as a manager for them.

4.      Throughout the course of her employment, Ms. Ollberding consistently received positive reviews up until reporting discrimination and harassment by her direct supervisor.

5.      Following her complaint, Ollberding began to receive negative performance evaluations and ultimately was suspended from her work and constructively discharged.

## PARTIES

6.     Ollberding incorporates by reference herein paragraphs 1-5 above as if fully set forth herein.

7.     Ollberding is a native Hawaiian, and a citizen and residence of Sarpy County, Nebraska.

8.     Goodwill is a Nebraska non-profit corporation with its principle office located at 4805 North 72nd Street, Omaha, Nebraska, 68134.

## VENUE AND JURISDICTION

9.     Ollberding incorporates by reference herein paragraphs 1-8 above as if fully set forth herein.

10.    This matter arises under both state and federal law.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331, based on Ollberding's federal claims.

11.    This Court has supplemental jurisdiction over Ollberding's state law claims pursuant to 28 U.S.C. §1367, as the state law claims are so interrelated with the federal question which grants this Court original jurisdiction.

12.    Pursuant to 28 U.S.C. §1391(b)(2) venue is proper in this jurisdiction as the state of Nebraska is the judicial district in which a substantial part of the events giving rise to Ollberding's claims arose.

## FACTUAL BACKGROUND

13.    Ollberding incorporates by reference herein paragraphs 1-12 above as if set forth fully herein.

14.     Goodwill hired Ollberding in February, 2019.  Ollberding's first day of work was February 26, 2019.

15.     On her first day Ollberding met with Kristin Janette ("Janette").

16.     Janette began training Ollberding at that time.  While in the course of training Ollberding, Janette took excessive amounts of time off to deal with family issues and personal errands while encouraging Ollberding to cover for her.  While being trained by Janette, Janette would frequently use intimidation along with ridicule, mockery, and disparaging comments to intimidate Ollberding and to interfere with Ollberding's work performance and ability to succeed.

17.     On a number of occasions between February 26, 2019, and March 6, 2019, Ollberding informed Janette that her conduct was offensive, unwelcome and that Ollberding was requesting that Janette stop.

18.     In addition to addressing matters directly with Janette, Ollberding also approached her immediate supervisor, Kari Hansen ("Hansen"), and verbally reported concerns.

19.     Ollberding's attempts to diffuse the situation without a written complaint to her supervisor was unsuccessful.

20.     On March 1, 2019, Hansen had visited Ollberding for supervisory work and asked Ollberding if she was Hispanic.  Hansen said she could not remember and said that she looked Latino.  Ollberding informed Hansen that she was not Latino and that she was, in fact, Native Hawaiian.

21.     On March 6, 2019, Ollberding sent a letter to Hansen along with two other work experience coordinators, Samuel Comfort ("Comfort") and Courtney Cale ("Cale"). In the letter Ollberding detailed the number of experiences with Janette including:

a.     that Janette had told Ollberding that no one was happy that Ollberding was hired and that some of the other Work Experience Trainers were intentionally being unwelcoming toward Ollberding because of this;

b.     repeatedly telling Ollberding that the job was not a good fit for Ollberding and that, in fact, was a better fit for Janette;

c.     threatening Ollberding about how many good staff members had been fired and how toxic Goodwill was as a place to work; and

d.     Janette's withholding of information as it pertains to training, specifically training on database programs and refusing to provide additional detailed information on work tasks.

22.     Following the March 6, 2019, email Ollberding had a meeting with Comfort as well as Goodwill's Human Resources Director, Jennifer Rohr ("Rohr") and Tobi Mathouser ("Mathouser"), Goodwill's Director of Mission Advancement.

23.     Following Ollberding's March, 2019, email, Goodwill conducted an internal investigation which was completed on March 12, 2019.

24.     The March 12th meeting occurred at 9:00 a.m.

25.     Between the time Ollberding's email was sent and the meeting was held between Ollberding and Goodwill's staff, only three business days had passed.  The only

4

outcome of the investigation and meeting was that Janette would be prohibited from working at Ollberding's training center.

26.     Subsequent to the meeting, Ollberding received an email from Rohr stating that if it was possible, Goodwill would find a different sub for the training center but was not assuring that Janette would not attend when needed.

27.     Following this meeting, again, Hansen inquired about Ollberding's race.

28.     Following the meeting in March, 2019, Ollberding began to receive conflicting responses as to reporting of sexual harassment of Goodwill employees by customers.  Additionally, Ollberding was effectively reprimanded for following some of the procedures which she had been required to follow.

29.     Following the conflicting details, a student was withdrawn from the program and Ollberding's work force site.

30.     On May 13, 2019, following a meeting with Goodwill staff, Ollberding was presented with a Corrective Action Counseling Form.  The Corrective Action Counseling Form was a direct result of conflicting command which Ollberding had received.

31.     Ordinarily, Ollberding's position was only during the school year; however, she had been given a position with Goodwill over the summer months as well handling similar job responsibilities as a Work Experience Trainer.

32.     On May 20, 2019, Ollberding attended an exit interview for a student. During that exit interview the student's mother informed Ollberding, as well as other Goodwill staff members, that the student would not be participating in the Goodwill program anymore as a result of interactions with Janette.

33.     Following the May 20, 2019, meeting, Janette continued to be an employee of Goodwill.

34.     On May 29, 2019, Ollberding was called in to a meeting with Mathouser and Rohr.  A number of concerns were addressed with Ollberding including those related to Ollberding's communication with school personnel from the schools which Goodwill works with.

35.     During the course of the meeting Ollberding did her best to respond to allegations raised against her and, additionally, sent subsequent written follow-up.  At the conclusion of that meeting, Ollberding was told that an investigation was going to be conducted and that during the pendency of that investigation, Ollberding was to be suspended.

36.     As a result of her past treatment with Goodwill, particularly the handling of the situation with Janette and the conflicting reports that she had received regarding how to do certain aspects of her job, including reporting, Ollberding felt that the investigation would ultimately just be used as grounds for further harassment of her as well as intimidation and that ultimately she would be removed regardless of the result of the investigation.  At that time, Ollberding submitted her resignation.

37.     Ollberding offered her resignation effective the following day and returned to work to collect personal belongings as well as to finalize aspects such as payroll.

38.     Ollberding was not permitted to ensure that her timecard was completed. Ollberding was not permitted to make certain that all work required of her in the databases were completed.

39.     Ollberding was also not permitted to send an email to her coworkers announcing her farewell as all other employees had been permitted to do.

40.     The information regarding the complaints by certain individuals is directly contradicted performance evaluations which Ollberding had received previously from the same individuals.

41.     On virtually all student evaluations, Ollberding was given excellent reviews and certain evaluations even noted that Goodwill improved once Ms. Ollberding arrived.

42.     In addition to the discrimination faced by Ollberding, Ollberding also was frequently not paid for breaks and was not permitted to take lunches but was not paid in compensation of the lunches.   At all times, Ollberding was a salaried, non-exempt employee.

43.     Ollberding timely filed the charge of discrimination with the Nebraska Equal Opportunity Commission.

44.     The NEOC has issued its right to sue letter on June 19, 2019.

## CLAIM I

**GOODWILL VIOLATED STATE AND FEDERAL LAW BY SUBJECTING OLLBERDING TO DISCRIMINATORY TREATMENT DURING THE COURSE OF HER EMPLOYMENT 42 U.S.C. §2000 E-2 *ET.SEQ.*; NEB. REV. STAT. §48-1101 *ET. SEQ.***

45.     Ollberding incorporates by reference herein paragraphs 1-44 above as if set forth fully herein.

46.     Pursuant to Title VII, it is unlawful for an employer to discharge an individual or otherwise discriminate against an individual with respect to that individual's "race, color, religion, sex or national origin…." 42 U.S.C. §2000 e-2.

47.     Likewise, Nebraska law makes it unlawful to discharge an individual or discriminate against an individual based upon their "race, color, religion, sex, disability, marital status, or national origin…." Neb. Rev. Stat. § 48-1104.

48.     In this case, Goodwill, through the actions of its management team, violated Title VII when it subjected Ollberding to different conditions of employment than applied to its Caucasian employees.   Specifically, Ollberding and Janette faced different repercussions for complaints when objectively Janette's were far more severe and were not contradicted by other evidence.

49.     Goodwill had no legitimate reasons for subjecting Ollberding to harsher conditions or more stringent treatment.

50.     As a result of her treatment from Goodwill Ollberding has suffered mental and emotional harm as well as a significant financial burden.

## CLAIM II

### GOODWILL VIOLATED FEDERAL AND STATE LAW BY FAILING TO COMPENSATE OLLBERDING FOR ALL HOURS WORKED

### NEB. REV. STAT. §48-1228; 29 U.S.C. §201 *ET. SEQ.*

51.     Ollberding incorporates herein by reference paragraphs 1-50 above as if set forth fully herein.

52.     Under Nebraska law, an employer is required to pay all wages due to their employees on regular days as has been designated by the employer.

53.     When an employee separates from an employer's payroll, the employee is entitled to their unpaid wages on the next regular payday or within two weeks of termination, whichever is earlier.

54.     Pursuant to federal law, an employee who works in excess of 40 hours per week is entitled to payment at a rate of no less than 1.5 times their ordinary hourly rate.

55.     Ollberding consistently worked in excess of 40 hours per week as she was not permitted to take lunches or hourly breaks.

56.     Ollberding was never paid for her time and a half.

57.     When employees are required to institute a wage claim to collect back-owed amounts under Nebraska law, they are entitled to attorney's fees.

## REQUEST FOR JURY TRIAL

58.     Ollberding incorporates by reference herein paragraphs 1-57 above as if set forth fully herein.

59.     Ollberding hereby elects that the above-captioned proceeding be set for a jury trial.

## REQUEST FOR RELIEF

60.     Ollberding incorporates by reference herein paragraphs 1-59 above as if set forth fully herein.

61.     Ollberding requests judgment in her favor and awarding the following:

  i.     Damages for lost and future wages based upon the discriminatory treatment suffered by Ollberding;

  ii.    Damages for emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

9

    iii.   Punitive damages for Defendant's knowing violation of state and federal discrimination laws;

    iv.   Costs and attorney's fees as allow by law; and

    v.   such other and further relief as the Court deems just and adequate.

Dated this 10th day of September, 2019.

> TIARA V. OLLBERDING,
> Plaintiff,
>
>
> by:  /s/Zachary W. Lutz-Priefert
> Zachary W. Lutz-Priefert, #25902
> Gross & Welch, P.C., L.L.O.
> 2120 So. 72nd Street, Suite 1500
> Omaha, NE 68124
> Telephone:  (402) 392-1500
> Facsimile:   (402) 392-8101
> zlutzpriefert@grosswelch.com
> Attorneys for Plaintiff

14068-1/6FI9853